## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————

YING LI                                           )
                                                  )
            Plaintiff,                            )
                                                  )
     v.                                           )    CIVIL ACTION NO. 07-0662(RMU)
                                                  )
MICHAEL CHERTOFF, et al.,                         )
                                                  )
            Defendants.                           )
————————————————————)

### SUR-REPLY MEMORANDUM
### IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER

On January 14, 2008, Plaintiff has filed a motion for leave to file a sur-reply brief on or before January 25, 2008. That motion remains unadjudicated at this time.

### I.    THIS COURT HAS JURISDICTION OVER PLAINTIFF'S COMPLAINT IN THE NATURE OF MANDAMUS

Plaintiff addressed that issue in great detail in her opposition to Defendants' motion to dismiss, and incorporate her arguments herein. In their reply, Defendants state that "Plaintiff's opposition memorandum discounts and ignores the national security implications of her contention that courts may direct USCIS to complete its adjudication of an adjustment of status application before the national security investigations and background checks have been completed." Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss or Transfer at 4 ("Reply Memo." hereinafter). First, this is an incorrect statement. Plaintiff does not state that her adjustment should be adjudicated prior to completion of the background checks. She states that those background checks have been unreasonably delayed, which, in turn, has unreasonably delayed adjudication of Plaintiff's application for adjustment of status. USCIS has the power to request the FBI to expedite those background checks. CIS local office does so

routinely in naturalization applications where a petition for hearing on naturalization has been

filed with a federal district court under 28 U.S.C. § 1447(b), or in selected cases where a

complaint in the nature of mandamus has been filed in federal district court.  A so-called

"expedite" does not make Plaintiff jump in front of the line, as Defendants argue, for the simple

reason that thousands of applications for adjustment of status filed after the one of Plaintiff have

been adjudicated prior to Plaintiff's.  See USCIS processing times at Exhibit 1, showing that I-

485 applications for adjustment of status filed on or about January 21, 2007 are currently being

adjudicated (Plaintiff's application was received on June 24, 2004).  However, if USCIS were to

request the FBI in Plaintiff's case to complete the background checks within a fixed time that

this Court would impose, the FBI would comply, as it has in many other cases, and USCIS could

complete Plaintiff's application for adjustment of status with the background checks having

cleared.

Defendants erroneously rely on the case of *Bruno v. Albright*, 157 F.3d 1153 (D.C.Cir.

1999), for the proposition that this Court has no jurisdiction to review matters touching on

national security or foreign affairs.  *Bruno* is inapposite to the case at bar.  The alien in *Bruno*

was seeking judicial review of the American consulate in Panama refusing to issue a visa to him,

and the decision of the American Consulate in La Paz, Bolivia, revoking another visa he held.

*See Bruno*, 157 F.3d at 1155.  Plaintiff does not challenge that a consulate has complete

discretion to grant, deny or revoke a visa.  Similarly, Plaintiff agrees that there is no judicial

review of USCIS' discretion to approve or deny her application for adjustment of status.

Defendants miss the basis of Plaintiff's argument.  Judge Pechman from the U.S. District Court

for the Western District of Washington crystallizes very well Plaintiff's argument on this issue—

> The Court is unconvinced by Defendants' argument that the security interests of
> the nation, particularly in the post-9/11 era, are sufficient excuse for failing to act

> on Mr. Xia's application.  Defendants have failed to produce *any* particular evidence about the information found during the processing of Mr. Xias' background check that might offer some valid reasons for delay.  *See Liu v. Chertoff,* 2007 U.S. Dist. LEXIS 50173, 2007 WL 2023548 at *4 (E.D.Cal. July 11, 207) (despite evidence of large volume of applications received and the extensive background checks required to process them a two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay."); *Huang,* 2007 WL 1831105 at *2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to the cause of the delay).  Although "national security must be considered a competing priority of the highest order[,]…the mere invocation of national security is not enough to render agency delay reasonable per se."  *Singh,* 470 F.Supp.2d. at 1069 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS and USCIS' failure to provide information via in camera review.

*Xia v. Gonzales*, Slip Copy, 2008 WL 168672, at *3 (D.C.Was. Jan. 15, 2008) (enclosed at

Exhibit 2).  Defendants argue that "if an applicant is a suspected criminal and/or terrorist, or a

known associate of such a person, the name check process should reveal that information."

Reply Memo. at 6.  It is perplexing for Defendants to argue that a more than three-year delay in

completing the background checks is in this nation's safety interest.  During this three years and

seven months delay, Plaintiff has lived and worked in the United States.  If she were a threat to

this nation, one would hope that the background checks be completed sooner, not later.

Defendants' reliance on *Zhu v. Gonzales*, 411 F.3d 292 (D.C.Cir. 2005) for the

proposition that this Court does not have jurisdiction over Plaintiff's complaint is misplaced.  *See*

Reply Memo. at 8.  In *Zhu*, the aliens were seeking judicial review of the Attorney General's

decision to deny a waiver of the requirement of a labor certification requirement for obtaining a

work visa.  It was a decision on the merits and within the Attorney General's complete discretion

to grant or deny that waiver.  *See* 8 U.S.C. § 1153(b)(2)(B)(i).  Clearly, such a discretionary

decision is not judicially reviewable.  Again, Plaintiff is not seeking judicial review of any

discretionary decision to grant or deny her application for adjustment of status, but instead is

simply seeking an order to compel Defendants to adjudicate her pending application which has been unreasonably delayed, a whole different matter.

Finally, Defendants ask this Court to follow the recent decision in this district of Judge Bates of *Orolov v. Howard*, ---F.Supp.2d---, 2007 WL 4293490 (F.D.C. Dec. 10, 2007). Judge Bates ruled that USCIS has complete discretion over the pace of processing adjustment applications, simply because Congress did not set a specific time limit for such adjudications, as it did at 8 U.S.C. § 1447(b). However, Judge Bates failed to even address whether there could be an unreasonable delay on the part of USCIS. His opinion fails to recognize that-

> Congress has expressed an expectation that the agency shall proceed to conclude a matter "within a reasonable time." 5 U.S.C. § 555(b). Further, the Immigration Services and Infrastructure Improvements Act of 2000 provides that it is "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). While the "180 days" deadline is non-binding, the standard of reasonableness must still be applied.

*Xia v. Gonzales*, Slip Copy, 2008 WL 168672, at *2. Judge Sullivan in *Liu v. Novak*, 509 F.Supp.2d 1 (D.D.C. Aug. 30, 2007), in contrast to the *Orlov* decision, fully analyzed the issue of reasonableness, relying on the holding of *Telecommunications Research & Action Center("TRAC") v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) to identify the factors relevant in determining whether agency delay is unreasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find "any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Liu v. Novak,* 509 F. Supp.2d at 8, *citing Telecommunications Research & Action Center v. FCC*, 750 F.2d at 80 (citations omitted).  In *Liu,* Judge Sullivan ruled that with regard to the first TRAC factor, a four-year delay for a name check process described by the Defendants "as one where data is primarily retrieved from an electronic database, and only occasionally from paper records," to be unreasonable.  *Id.* at 8.  The three years and seven months delay in Plaintiff Ying Li's case for the same reason is equally unreasonable.  Judge Sullivan at footnote 4 noted that "Congress has not provided a timetable for this action, so the second TRAC factor is inapplicable."  *Id*.  Judge Sullivan in *Liu* has further ruled that—

> With regard to the third and fifth TRAC factors, [...] [t]he inability to obtain permanent resident status affects a wide range of important rights."  [citing *Singh v. Still*, 470 F.Supp.2d 1064, 1070 (N.D.Cal.2007)].  For example, the delay prejudices plaintiff's ability to petition to immigrate close family members and adversely impacts his ability to seek United States citizenship.  *See id.*  Thus, these factors weigh in favor of finding the delay unreasonable.

*Liu v. Novak,* 509 F.Supp.2d at 9.  The delay in adjudicating her application for adjustment of status to permanent resident prejudices Plaintiff Ying Li by postponing her ability to seek future naturalization, and thus, of the right to vote in elections, and by depriving her of the current ability to petition close family members if she were a permanent resident.  Regarding the fifth TRAC factor, like the plaintiff in *Liu*, Plaintiff Ying Li is not the subject of any active investigation.  Indeed, none of the declarations submitted by Defendants states that Plaintiff is under any type of ongoing investigation, or that any check has triggered the need for further investigation.  Judge Bates in *Orlov*, ---F.Supp.2d.---, 2007 WL 4293490 at *5 notes that-

> [i]f an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner.  If, after six months of the district director's determination, the investigation has not been completed, the matter shall be review again by the district director and, if he/she concludes that more time is needed to complete the investigation,

adjudication may be held in abeyance for up to another six months.  If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months.  Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

In sum, the Defendants have not shown, and the record does not show, that Plaintiff is the subject of an investigation, which could therefore justify the delay for the adjudication of her adjustment application.  To the contrary, Defendants have been unable to give any rational explanation as to why Plaintiff's case has been unduly delayed after an initial screening, while other such cases under review have been quickly concluded.  Judge Pechman correctly concludes-

This Court is not interested in adjusting the legal status of an individual when there is a valid reason for the denial of that adjustment.  However, Defendants have offered no reason why Mr. Xia's application should not be adjudicated.

Xia, Slip Copy, 2008 WL 168672, at 3.  Similarly, Defendants have offered no reason why Plaintiff's application for adjustment of status should not be adjudicated.

## II.    TRANSFER TO THE NORTHERN DISTRICT OF TEXAS IS NOT WARRANTED

This Court should deny the Defendants' motion to transfer venue.  Venue should properly remain in the District of Columbia under 28 U.S.C. § 1391(e) and the Defendants have not demonstrated that a transfer to the U.S. District Court for the Northern District of Texas is warranted under 28 U.S.C. § 1404(a).  In particular, the Defendants' assertion that the only nexus between this District and this case is the fact that "two of the agency heads named as defendants have offices in Washington D.C." is plainly wrong.  *See* Reply Memo. at 14.  The source of the complained delay in adjudicating the Plaintiff's application for adjustment of status is solely due

to the required security and background checks.  Decisions governing the imposition and

processing of security and background checks on applicants for certain immigration benefits,

including adjustment of status, occur at the highest levels of CIS and DHS—namely, at CIS and

DHS Headquarters in Washington D.C. As the Defendants have acknowledged, the Plaintiff's

adjustment application remains unadjudicated by CIS because required FBI name, FBI

fingerprint, and IBIS background checks have not yet been completed.  *See* Cannon Declaration

at 16.  Although the Defendants argue that the Texas Service Center is responsible for issuing the

final adjudication of the Plaintiff's application for adjustment of status, they offer no evidence

that the required background checks are actually being carried out by CIS officials in Texas.  To

the contrary, Defendants acknowledge that all the Texas Service Center officials can do is make

inquiries to the FBI--located in Washington D.C.-- regarding the status of the background

checks.  *See* Court's Document 18-6 at paragraph 9 ("Meyer Declaration," hereinafter).  In sum,

the basis for Plaintiff's complaint stems from the delays by the FBI in processing background

checks.

## Standard of Review

A civil action brought against a U.S. Government defendant is governed by the venue

provision of 28 U.S.C. § 1391(e).  The plaintiff's choice of forum is entitled to "great deference"

and is a "paramount consideration" in deciding whether to grant a defendant's transfer request.

*Shawnee Tribe v. United States*, 298 F.Supp. 2d 21, 24 (D.D.C. 2002); *see also Southern Utah*

*Wilderness Alliance v. Norton*, 315 F.Supp.2d 82, 86 (D.D.C. 2005) ("Courts give considerable

deference to the plaintiff's choice of forum.")  In deciding whether a transfer is appropriate,

"unless contradicted by any evidentiary showing, the court accepts the plaintiff's well-pled

factual allegations regarding venue as true, draws all reasonable inferences from those

allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, 2006 WL 1805607, at *1 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted). Notwithstanding, even when the plaintiff's choice of venue is found to be proper under 28 U.S.C. § 1391(e), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the case at bar, the Defendants seek a transfer pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Northern District of Texas, where, they contend, venue is more appropriate. Reply Memo. at 14. However, venue in Texas is entirely inconvenient to the Plaintiff who has no ties to Texas, and her attorney prosecuting her case is in Washington D.C.

As a moving party, the Defendants bear the "heavy burden" of demonstrating that a transfer to the Northern District of Texas is proper. *See Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.D.C. 1980); *Shenandoah Assoc. Ltd. Partnership v. Tirana*, 182 F.Supp.2d 14, 25 (D.D.C. 2001); *Greater Yellowstone Coalition v. Bosworth*, 180 F.Supp.2d 124, 127 (D.D.C. 2001). The Court is afforded broad discretion to decide whether transfer is warranted, employing "an individualized, case-by-case consideration of convenience and fairness" and honoring a plaintiff's venue selection unless "the balance of private and public interests weighs in favor of transfer." *Abusadeh v. Chertoff*, Slip Copy, 2007 WL 2111036, at *3-4 (D.D.C. July 23, 2007) (quoting *van Dusen v. Barrack*, 376 U.S.612, 622 (1964)); *see also SEC v. Savoy Indus, Inc.*, 587 F.3d 1149, 1154 (D.C.Cir. 1978). Such deference is lessened, however, if the plaintiff's forum choice "lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter. *Islamic Republic of Iran v. Boeing Co.*, 477 F.Supp. 142, 144 (D.D.C. 1979); *see also Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86. Moreover, the

Defendants' burden for a motion to transfer decreases if it is shown that the Plaintiff's choice of venue "has no *meaningful nexus* to the controversy and the parties." *Greater Yellowstone,* 180 F.Supp.2d at 128 (emphasis added); *Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12 (D.D.C. 2000).

Under 18 U.S.C. § 1404(a), the Defendants, who bear the burden of establishing that a transfer is appropriate, must make two showings to justify their desired change of venue. *See Sierra Club v. Flowers*, 276 F.Supp.2d 62, 65 (D.D.C. 2003); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996). First, the Defendants must demonstrate that the Plaintiff could have brought this action in the proposed transferee district. *Sierra Club*, 276 F.Supp.2d at 65*; see also Van Dusen*, 376 U.S. at 622. Second, the Defendants must establish that considerations of convenience and the interest of justice weigh in favor of a transfer to the Northern District of Texas. *Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86; *Trout Unlimited*, 944 F.Supp. at 16. As to the second factor, the Court must weigh a number of case-specific private-interest and public-interest factors and "transfer a case *only* if the balance of private and public interests weighs in favor of transfer." *Abusadeh*, 2007 WL 2111036, at *4 (emphasis added). The private-interest factors include the following: (1) the Plaintiff's choice of forum; (2) the Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease and access to sources of proof. *Sierra Club*, 276 F.Supp.2d at 65; *Trout Unlimited*, 944 F.Supp. at 16. The Court also evaluates the following public-interest considerations: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions to the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Abusadeh*, 2007 WL 2111036, at *4; *see also Jumara v. State Farm*

*Ins. Co.*, 55 F.3d 873, 879-80 (3ᵈ Cir. 1995); *Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86.

### A.  Private-Interest Consideration Weigh Against a Transfer

#### 1. The Plaintiff's choice of forum is entitled to deference.

In evaluating the Defendants' motion, this Court must first determine whether venue is proper for the Plaintiff's claims, before turning to the threshold question whether this action "might have been brought" in the Northern District of Texas.  *Van Dusen*, 376 U.S. at 616; *Abusadeh*, 2007 WL 2111036, at *3.  At the outset, venue properly lies in the District of Columbia because all three named Defendants reside in this District and national policy concerning adjudication of applications for immigration benefits, such as adjustment of status to lawful permanent resident and imposition of required background and security checks, is formulated by DHS, CIS and FBI Headquarters in Washington D.C.  Accordingly, Plaintiff's choice of forum merits deference.  *See Shawnee Tribe*, 298 F.Supp.2d at 24 ([A] plaintiff's choice of forum is afforded great deference, and is a 'paramount consideration' in any determination of a motion to transfer.") (quoting *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp.22, 25 (D.D.C. 1997)); *see also Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 286 ("The moving party '[b]ears a heavy burden of establishing that plaintiff's choice of forum is inappropriate.'") (quoting *Pain v. United Tech. Corp.,* 637 F.2d 775, 784 (D.D. Cir. 1980)).

#### 2. The Defendants' choice of forum is not entitled to deference.

The Defendants contend that the Plaintiff's choice of forum deserves little deference because she does not reside in the District of Columbia.  However, Plaintiff does not reside in Texas either, but in Arlington, Virginia.  Furthermore, the Defendants' argument that this

judicial district lacks meaningful ties to the controversy is belied by the nature of the background check process itself, which has forestalled adjudication of the Plaintiff's adjustment application. In her declaration, Officer Meyer states that "USCIS suspended adjudication in accordance with the requirements for security screening of aliens using intelligence information having a bearing on the security of the United States." Meyer Declaration at paragraph 8. According to the Defendants, therefore, CIS may not even proceed with the adjudication of the Plaintiff's adjustment application until her security checks are completed. Indeed, it is possible that the Texas Service Center may not adjudicate the application, but acts only as a conduit and then forward the application for an interview of Plaintiff at the Washington district field office. These facts contradict the Defendants' insistence that venue is more appropriate in the Northern District of Texas. The processing of requisite background and security checks, which is the admitted source of delay in adjudicating the Plaintiff's application for adjustment, takes place *outside* of the Texas Service Center. Contrary to the Defendants' allegations, the private interests in this case do not favor a transfer to the Northern District of Texas because the primary issue in this case concerns decisions on routine background and security checks made outside the realm of the CIS Texas Service Center.

Furthermore, there is very little connection between Plaintiff and the Texas Service Center. Plaintiff's application for adjustment of status was originally filed with the USCIS Vermont Service Center, as requested by USCIS filing instructions in effect in 2004. The CIS website does not indicate that Plaintiff's file is currently pending with the Texas Service Center. It only indicates that it "is now pending standard processing at a USCIS office." Exh. 3. Were it not for Defendants' pleadings and exhibits, Plaintiff would simply not know at which office her file was located. Therefore, how could she logically file a complaint in the nature of mandamus

with the Northern District of Texas, when there was no information from CIS advising Plaintiff where her file was located. Defendants could simply attempt to stifle justice by again transferring Plaintiffs' applications to yet another location and then proclaiming that to be the proper venue for this cause of action. The Texas Service Center is not an office where Plaintiff can call or go in person to inquire about the status of her case. When Plaintiff wants to make a phone inquiry, she has to do so through the National Service Center, not to the Texas Service Center. When Plaintiff needs to inquire in person about the status of her case with USCIS, she is directed to do so at the Washington Field Office, not in Texas. There is therefore very little connection between Plaintiff's case and the Texas Service Center.

This is what makes the clear distinction between Plaintiff's case and those cited by Defendants in their Reply Memorandum. Defendants argue that "Plaintiff ignores most cases from this District and Circuit holding that cases seeking review of actions being taken by agency field offices should be transferred to the district in which the field office is located, rather than being heard in Washington D.C." Reply Memo. at 14. If Plaintiff's case requires a personal interview, then the Washington district field office will adjudicate her application, not the Texas Service Center. This clearly distinguishes Plaintiff's case from the one of *Poliakova*, No. 07-1210 (D.D.C. December 17, 2007). Poliakova's application for adjustment of status was pending with the CIS Miami field office, where she was interviewed regarding her application for adjustment of status. Poliakova resided in Southern Florida, and Poliakova's counsel admitted that "Plaintiff does not dispute that this is an action 'which might have been brought' in the Southern District of Florida, as she herself resides there." Similarly, in the case of *Fayyaz*, No. 06-02016 (October 25, 2007). Plaintiff resided in Houston, Texas. Defendants also cite *Abusadeh v. Chertoff*, 2007 WL 2111036 (D.D.C. July 23, 2007). Again, Abusadeh did not

apply for an I-485 application for adjustment of status, but for naturalization. This fact is crucial, because Abusadeh resided in Texas; the Texas District Office was the place where his interview and examination for naturalization took place, as mandated by statute (see 8 U.S.C. § 1427(a), which requires an applicant for naturalization to have resided within the State in the United States in which the applicant files the application for at least three months). The Texas District Office was also the local office of USCIS where Abusadeh could inquire in person about the status of his application. No such residency requirements and ties exist in the context of an application for adjustment of status. Indeed, the local Texas field office, or district office, has no jurisdiction over Ms. Li's application for adjustment of status.

The Defendants also unpersuasively refer to the case of *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993), to justify a transfer to Texas. As the *Cameron* Court explained, "this was an unusual case to bring in the District of Columbia.  As far as it appears from the appellant's original complaint and his brief on appeal, all acts and omissions related to his complaint occurred in Indiana or at the prison medical center in Springfield, Missouri.  Similarly, the two appellees most directly connected to Cameron's case […] were in Indiana and Kansas, respectively." Id. at 256.  Furthermore, the *Cameron* Court ruled that venue under 28 U.S.C. § 1391(e) was not proper because it did not apply to *Bivens* actions, such as the one of Cameron's. *Id.*  However, the *Cameron* Court pointed out that "[s]ection 1391(e) makes venue proper for a suit against government officials in any district in which one defendant resides.  Because Attorney General Thornburgh lived in the District of Columbia, the court correctly concluded that venue would have been proper in this district *for the injunctive claim.*"  *Id*. at 257, FN2. This is exactly the case for Plaintiff Li: she is seeking injunctive relief to compel Defendants to adjudicate her name check and application for adjustment of status; she is suing Defendants who

are government officials in their official capacity; and all three Defendants reside in the District of Columbia.  Thus, venue is clearly proper within the District of Columbia.

### 3. The Plaintiff's claim arose in this District.

Next, the Court looks to whether the action arose somewhere outside the Plaintiff's chosen forum.  *E.g., Sierra Club*, 276 F.Supp.2d at 67.  In *Abusadeh v. Chertoff*, relied on by Defendants, the Court granted the Defendants' transfer request, in part, because Abusadeh had previously filed a district court action in another jurisdiction—presenting the same factual allegations but different legal theories—and "only brought suit here after being *denied* the relief he sought in the Southern District of Texas."  *Abusadeh*, 2007 WL 2111036, at *5 (emphasis added).  No such facts exist here; to the contrary, Plaintiff brought her original action in this Court.  For this reason as well, the Court should defer to the Plaintiff's choice of forum.

### 4. The convenience of the parties does not favor a transfer.

The convenience of the parties carries no weight where the "action involves an administrative review that the court is likely to determine on the papers," as in this case.  *Sierra Club*, 276 F.Supp.2d at 69.  Furthermore, the dispositive issue is the delay owing to uncompleted security and background checks.  Processing of those checks occurs outside of the Northern District of Texas.  As the Defendants conceded, the Texas Service Center cannot proceed with the adjudication of this matter until the security checks have been completed.  Finally, Plaintiff does not reside in Texas, unlike all the other Plaintiffs who resided where the Court had decided to transfer the case to other jurisdictions.

The action before this Court pertains solely to the Defendants' unreasonable delay.  *See, Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. § 1331, in combination with the APA, vests the court with jurisdiction to compel agency

action that is unreasonably delayed or withheld.")  Accordingly, the Defendants have failed to identify any local interest in resolving this case in Texas, as the delay is the result of FBI's failure to complete background checks within a reasonable time, checks which occur outside of the state of Texas.  *Cf., e.g., Rosales v. United States,* 477 F.Supp.2d 213, 216 (D.D.C. 2007) (granting transfer request because "this dispute involves individuals, real property, and native American cultural items that are exclusively located in the Southern District of California.") Moreover, all of the Defendants have their office in the District of Columbia.

### 5. The convenience of the witnesses does not favor a transfer.

Plaintiff resides in Arlington, Virginia, which borders Washington D.C.  Plaintiff anticipates that her complaint in the nature of mandamus will be decided solely on the written pleadings, and should the Court deem necessary, argument by counsel, without the need for witnesses or testimony.  In addition, Plaintiff's counsel is located in Washington D.C., as is Defendants' counsel.  If discovery is necessary, it would be directed mostly at Defendant FBI located in Washington D.C.  Therefore, there is no basis for the Defendants' claim that it is more convenient to litigate this case in the Northern District of Texas.  *cf. Joyner v. District of Columbia*, 267 F.Supp.2d 15, 21 (D.D.C. 2003) (finding that "interest of justice and convenience of the parties and witnesses" justify transfer to district "where the prison of Frank Joyner's murder is located, where the records and other physical evidence will be found, and where it is likely that most of the potential witnesses are located.")

### 6. Ease of access to sources of proof does not favor a transfer.

Finally, the ease of access to sources of proof is of little significance, where the Court will likely decide this case on the administrative record.  *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 527 (D.D.C. 1987) (noting that since the record had to be shipped to the

15

parties' District-based counsel, it was not "a significant greater hardship" to send a copy to the courthouse as well).

**B. Public-Interest Considerations Weigh Against a Transfer**

*1.  Transferee's familiarity with governing laws.*

This case involves interpretation of federal statutes.  Plaintiff's complaint seeks this Court's intervention under the mandamus and federal question statutes and the APA, owing to Defendants' unreasonable delay in adjudicating her application for adjustment of status.  *See Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. § 1331, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld.")  In other cases where the District Court of Columbia has found transfer to be warranted, the suits involved a localized dispute with little national significance and the alternative venue was more familiar with governing laws.  *See, e.g., Southern Utah Wilderness Alliance,* 315 F.Supp.2d at 88-89; *Sierra Club*, 276 F. Supp.2d at 71; *Trout Unlimited*, 944 F.Supp. at 19.  By contrast, Plaintiff's case does not involve any issue of state or local law, and, instead, touches upon an issue of national significance—delays in the processing of applications of immigration benefits as a result of security background checks.  Therefore, because this action pertains exclusively to federal laws that have a nationwide application, there is no advantage to have the case transferred to a district court in Texas.

2.  *Relative congestion of Courts' respective calendars*.

Defendants have offered no evidence regarding the relative congestion of this Court versus the U.S. District Court for the Northern District of Texas.  Consequently, this factor likewise does not alter the balance in favor of a transfer.

*3.  Local interest in deciding local controversies.*

Plaintiff's application for adjustment was originally filed with the USCIS Vermont Service Center. It was subsequently transferred, unbeknownst by Plaintiff, to the USCIS Texas Service Center. If tomorrow Defendants so choose, they can transfer Plaintiff's case to another Service Center or to the local Washington field office. This is not a case, therefore, where local interest or local impact tips the public-interest balance in favor of a transfer. *See Greater Yellowstone*, 180 F.Supp.2d at 129-30; *Wilderness Soc'y*, 104 F.Supp.2d at 13-14; *cf, e.g., Shawnee Tribe*, 298 F.Supp.2d at 27 (finding a compelling "local interest" favoring transfer where resolving the controversy at issue "would require not only knowledge and experience in interpreting Native American Indian treaties, but examination of local property records and deeds and other documents"). This Court has cautioned that a transfer is disfavored if the possibility exists that defendants are forum-shopping. *See Grater Yellowstone,* 180 F.Supp.2d at 129.

**C. Transfer of this Case Will Result in Further Unreasonable Delay**.

Most significantly, a grant of Defendants' motion to transfer would unavoidably lead to further and unnecessary delay. The prospect of such additional delay weighs heavily against an approval of Defendants' motion to dismiss, in light of the fact that Plaintiff has already waited more than three years and seven months for her application for adjustment of status to be adjudicated. *Cf. Trout Unlimited*, 944 F. Supp. At 19 (granting government's transfer request where "[i]t is not evident that a transfer to the Northern District of Colorado will lead to unnecessary delay.") In *Abusadeh v. Chertoff*, the transfer to the Southern District of Texas further delayed the case for an additional five months. *See Abusadeh v. Chertoff*, Slip Copy, 2007 WL 4591757 (S.D.Tex. Dec. 27, 2007) (the case was ordered to be transferred by the D.C.

Court on July 23, 2007, and was decided in Texas more than five months later on December 27, 2007, a substantial delay).

Based on the foregoing, it is clear that Defendants have failed to satisfy their burden under 28 U.S.C. § 1404(a) of demonstrating that a transfer to the Northern District of Texas is warranted. Plaintiff, therefore, urges this Court to deny Defendants' motion to transfer, to rule that it has jurisdiction over Plaintiff's complaint, and to deny Defendants' motion to dismiss.

January 25, 2008                    Respectfully submitted,


                              _____/s/_____
                              Thomas A. Elliot, Esquire
                              D.C. Bar No. 259713
                              Elliot & Mayock
                              1666 Connecticut Avenue, N.W., 5th Floor
                              Washington, D.C. 20009
                              202-429-1725

                              Attorney for Plaintiff

Service Center Processing Dates for **Texas Service Center** Posted December 14, 2007

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|---|---|---|---|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance or replacement | 6 Months |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | 3 Months |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Visa to be issued abroad | 2 Months |
| | | | |

| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Change of status in the U.S. | 2 Months |
|---|---|---|---|
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Extension of stay in the U.S. | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | H-2A - Temporary workers | 15 Days |
| I-129 | Petition for A Nonimmigrant Worker | H-2B - Other temporary workers | 30 Days |
| I-129 | Petition for A Nonimmigrant Worker | H-3 - Temporary trainees | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | E - Treaty traders and investors | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | L - Intracompany transfers | 30 Days |
| I-129 | Petition for A Nonimmigrant Worker | Blanket L | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | O - Extraordinary ability | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | P - Athletes, artists, and entertainers | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | Q - Cultural exchange visitors and exchange visitors participating in the Irish Peace process | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | R - Religious occupation | 2 Months |
| I-129 | Petition for A Nonimmigrant Worker | TN - North American Free Trade Agreement (NAFTA) professional | 2 Months |
| I-131 | Application for Travel Document | All other applicants for advance parole | 3 Months |
| I-140 | Immigrant Petition for Alien Worker | Extraordinary ability | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Outstanding professor or researcher | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Multinational executive or manager | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Schedule A Nurses | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability requesting a National Interest Waiver | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Skilled worker or professional | 6 Months |
| I-140 | Immigrant Petition for Alien Worker | Unskilled worker | 6 Months |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | All other special immigrants | October 11, 2006 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | January 21, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on grant of asylum more than 1 year ago | August 01, 2004 |
| I-526 | Immigrant Petition By Alien Entrepreneur | For use by an entrepreneur who wishes to immigrate to the United States | 6 Months |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change of status to H or L dependents | June 13, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change status to the F or M academic or vocational student categories | June 13, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change Status to the J exchange visitor category | June 13, 2007 |
| I-539 | Application to Extend/Change | All other change of status applications | June 13, 2007 |

|  | Nonimmigrant Status | | |
|---|---|---|---|
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of stay for H and L dependents | June 13, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for F or M academic or vocational students | June 13, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for J exchange visitors | June 13, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | June 13, 2007 |
| I-612 | Application for Waiver of the Foreign Residence Requirement | Application for a waiver of the 2-year foreign residence requirement based on exceptional hardship or persecution | February 09, 2007 |
| I-730 | Refugee/Asylee Relative Petition | Petition for accompanying family members of a refugee or an asylee | January 31, 2007 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of lawful permanent resident conditions (spouses of U.S. citizens and lawful permanent residents | April 08, 2007 |
| I-765 | Application for Employment Authorization | Based on a request by a qualified F-1 academic student. [(c)(3)] | 11 Weeks |
| I-765 | Application for Employment Authorization | Based on a pending asylum application [(c)(8)] | 30 Days |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment application [(c)(9)] | 11 Weeks |
| I-765 | Application for Employment Authorization | Based on TPS for Honduras/Nicaragua [(c)(19), (a)(12)] | 11 Weeks |
| I-765 | Application for Employment Authorization | Based on TPS for El Salvador [(c)(19)(a)(12)] | 11 Weeks |
| I-765 | Application for Employment Authorization | All other applications for employment authorization | 11 Weeks |
| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program | 6 Months |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | 6 Months |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) | 6 Months |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) based on PL107-273 | 6 Months |

Westlaw.

Slip Copy
Slip Copy, 2008 WL 168672 (W.D.Wash.)
(Cite as: Slip Copy)

Page 1

Xia v. Gonzales
W.D.Wash.,2008.
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.
Lin XIA, Plaintiff,
v.
Alberto GONZALES, et al., Defendant.
No. C07-728 MJP.

Jan. 15, 2008.

Lin Xia, Redmond, WA, pro se.
Darwin P. Roberts, U.S. Attorney's Office, Seattle,
WA, for Defendants.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

MARSHA J. PECHMAN, District Judge.

*1 This matter comes before the Court on
Plaintiff's motion for summary judgment. (Dkt. No.
12.)After reviewing the motion, Defendant's re-
sponse and cross-motion for summary judgment
(Dkt. No. 13), Plaintiff's reply (Dkt. No. 15), De-
fendant's reply (Dkt. No. 16), and all documents
submitted in support thereof, the Court GRANTS
Plaintiff's motion for summary judgment. The De-
fendants are ordered to complete the processing of
Mr. Xia's application with sixty (60) days or to
show cause to the Court why Plaintiff should not
have his status adjusted to that of lawful permanent
resident.

Background

Plaintiff Lin Xia is a citizen of the People's Re-
public of China. On March 24, 2004, Mr. Xia filed
his Adjustment of Status application with the
United States Citizenship and Immigration Service
("USCIS") to become a lawful permanent resident.
On March 31, 2004, USCIS requested that the Fed-
eral Bureau of Investigation ("FBI") conduct a
"name check" investigation of Mr. Xia. On April 6,

2004, the FBI acknowledged receipt of the request
but has yet to complete the name check. Mr. Xia's
application is still pending. Although Defendants
have put forth facts showing that Plaintiff's name
check was required to go through four stages of re-
view, they have offered no explanation as to why
the name check has been stagnant at the final re-
view stage for three years. Defendants have not
offered any evidence indicating that Mr. Xia's ap-
plication for adjustment of status should be denied.

Discussion

Summary judgment is appropriate when there
is no issue of material fact and the moving party is
entitled to judgment as a matter of law.
Fed.R.Civ.P. 56. The parties agree that this matter
contains no disputed facts. This Court has jurisdic-
tion over the action pursuant to 28 U.S.C. § 1331 in
accord with 28 U.S.C. § 1361 and 5 U.S.C. § 706 of
the Administrative Procedure Act ("APA"). Under
28 U.S.C. § 1361, district courts have original juris-
diction over any action in the nature of mandamus
to compel an officer or employee of the United
States or any agency thereof to perform a duty
owed to the plaintiff. *See Patel v. Reno,* 134 F.3d
929, 931 (9th Cir.1997). The Court also has juris-
diction under the APA because Plaintiff has demon-
strated that the USCIS has unreasonably delayed
the processing of his application. *See*5 U.S.C. §
555(b) ("With due regard for the convenience and
necessity of the parties of their representatives and
within reasonable time, each agency shall proceed
to conclude a matter presented to it.") *See also id.*§
706(1) (providing that courts shall "compel agency
action unlawfully withheld or unreasonably
delayed"). Agency action includes a failure to act.
*Id.* at § 555(13).

The Court is not convinced by Defendants' ar-
gument that the nature of processing the application
is "discretionary" and therefore federal jurisdiction
is barred. Adjudication of a status application is
mandatory, not discretionary. *See*8 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1252(a)(2)(B)(ii); *See also Huang v. Gonzales,* 2007 WL 1302555, at \*7-10 (W.D.Wash. May 2, 2007) (Martinez J.) (holding that 1252 does not bar judicial review in context of reasonable delay or refusal to act because nothing in INA specifies discretion as to the pace in which status applications are adjudicated); *Chen v. Heinauer,* 2007 U.S. Dist. LEXIS 36661, at \*3 (W.D.Wash. May 18, 2007) (Lasnik J.) (same); *Duan v. Zamberry,* 2007 U.S. Dist. LEXIS 12697, at \*7 (W.D.Penn. Feb. 23, 2007) (noting that while "the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required to [strip the court of jurisdiction]"); *Tang v. Chertoff,* 493 F.Supp.2d 148, 153-54 (D.Mass 2007) ("Despite the care taken in the INA to specify the substance of an adjustment of status decision as discretionary, the pacing of such a decision is not so specified.").

**\*2** Defendants correctly argue that the enabling statute and regulations provide no clear time frame for the adjudication of an application. However, Congress has expressed an expectation that the agency will proceed in a timely manner. For example, Section 555(b) of the APA provides that each agency shall proceed to conclude a matter "within a reasonable time." 5 U.S.C § 555(b). Further, the Immigration Services and Infrastructure Improvements Act of 2000 provides that it is "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."8 U.S.C. § 1571(b). While the "180 days" deadline is non-binding, the standard of reasonableness must still be applied. Defendants do "not posse[s] unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely."*Salehian v. Novak,* 2006 U.S. Dist. LEXIS 77028, at \*9 (D.Conn. Oct. 23, 2006) (quoting *Kim v. Ashcroft,* 340 F.Supp.2d 384, 393 (S.D.N.Y.2004)) (internal quotations omitted).

**Merits of Mr. Xia's Claim**

The parties do not dispute that Plaintiff's application has been pending for over 43 months and has not been adjudicated because the background and security check are incomplete. (Heinauer Decl., at 3, ¶ 7.) Defendants have offered no particular evidence to the Court showing that this delay is reasonable. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."*Gelfer,* 2007 WL 902382 at \*2 (citation omitted). The Ninth Circuit has adopted a six-factor test (the "TRAC factors") for evaluating the reasonableness of an agency's decision-making process. *Brower v. Evans,* 257 F.3d 1058, 1068 (9th Cir.2001) (quoting *Telecomms. Research & Action v. FCC* ), 750 F.2d 70, 80 (D.C.Cir.1984)).

In applying the first of those factors, the rule of reason, the Court considers that, although Plaintiff's name check resulted in "hits" and required additional review of FBI files, Defendants do not explain why Plaintiff's application has been pending for three years in the "final stage" of the review process. The second factor requires that the Court give deference to a statutory or regulatory timetable. As noted above, Congress did not enact a mandatory timetable for the processing of these applications but dictated that it should be done in a reasonable time. The third and fifth TRAC factors require that the Court consider how the agency's delay affects human welfare. *See Singh v. Still,* 470 F.Supp.2d 1064, 1069 (finding human health and welfare to be at stake in case involving delay of I-485 application to adjust status). As discussed below, Mr. **Xia's** occupation, travel and family have been affected by the delay. In considering the fourth factor, the Court acknowledges that expediting the processing of Mr. **Xia's** application will place him ahead of others who also have applications waiting. The agency's (or FBI's) lack of resources, however, is an insufficient basis for considering this delay reasonable. Finally, the sixth TRAC factor notes that the Court need not find any impropriety in order to hold that agency action is unreasonably delayed.

**\*3** The Court is unconvinced by Defendants'

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 168672 (W.D.Wash.)
**(Cite as: Slip Copy)**

argument that the security interests of the nation, particularly in the post-9/11 era, are sufficient excuse for failing to act on Mr. **Xia's** application. Defendants have failed to produce *any* particular evidence about the information found during the processing of Mr. **Xia's** background check that might offer some valid reason for the delay. *See Liu v. Chertoff,* 2007 WL 2023548 at *4 (E.D.Cal. July 11, 2007) (despite evidence of large volume of applications received and the extensive background checks required to process them a two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay"); *Huang,* 2007 WL 1831105 at *2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to the cause of the delay). Although "national security must be considered a competing priority of the highest order [,] ... the mere invocation of national security is not enough to render agency delay reasonable per se."*Singh,* 470 F.Supp.2d. at 1069 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS and USCIS's failure to provide information via in camera review).

Mr. **Xia** claims that the delay in his application has caused career stagnation, the inability to travel freely, and the inability to plan for the future of his family. He also wishes to begin accruing time to be eligible for naturalization as a citizen of the United States. *See*8 U.S.C. § 1427(a) (providing that a permanent resident may not apply for citizenship until he or she has resided continuously in the U.S. for five years preceding the date of filing the application).

### Conclusion

The Court is not interested in adjusting the legal status of an individual when there is a valid reason for the denial of that adjustment. However, Defendants have offered no reason why Mr. **Xia's** application should not be adjudicated. Plaintiff's mo-

tion for summary judgment is GRANTED and the Court finds that the delay in processing Plaintiff's status application is unreasonable as a matter of law. Defendants are ordered to complete the processing of Plaintiff's application within sixty days.

The Clerk is directed to send copies of this order to all counsel of record.

W.D.Wash.,2008.
Xia v. Gonzales
Slip Copy, 2008 WL 168672 (W.D.Wash.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Case Status Search

Receipt Number:    eac0419850045

Application Type:    I485, APPLICATION TO REGISTER PERMANENT RESIDENCE OR TO ADJUST STATUS

Current Status:
This case is now pending at the office to which it was transferred.

The I485 APPLICATION TO REGISTER PERMANENT RESIDENCE OR TO ADJUST STATUS was transferred and is now pending standard processing at a USCIS office. You will be notified by mail when a decision is made, or if the office needs something from you. If you move while this case is pending, please use our Change of Address online tool to update your case with your new address. We process cases in the order we receive them. You can use our processing dates to estimate when this case will be done, counting from when USCIS received it. Follow the link below to check processing dates. You can also receive automatic e-mail updates as we process your case. To receive e-mail updates, follow the link below to register.

_____

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact the USCIS Customer Service at (800) 375   5283 or 1-800-767-1833 (TTY).